**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**SOUTHERN DIVISION**

| | |
|---|---|
| VALERIE KINMAN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>SARAYA USA, INC. d/b/a LAKANTO, a Utah corporation,<br><br>　　　　　　　　　　Defendant. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Valerie Kinman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Saraya USA, Inc. doing business as Lakanto ("Defendant"). Plaintiff alleges the following upon personal knowledge, investigation of counsel, and information and belief.

<u>**NATURE OF THE ACTION**</u>

1.　　This putative class action seeks to hold Defendant responsible for materially misleading statements made on the labels of its LAKANTO MONKFRUIT SWEETENER (the "Products" or "Product").[1]

2.　　Despite numerous, prominent representations on the Product labels that the

---

[1] The definition of Products includes all sizes of the "Classic" and "Golden" flavors of Defendant's "MONKFRUIT SWEETENER".

Products are a "MONKFRUIT SWEETENER" containing a "rare superfood prized for its sweetness and ability to raise chi, or life energy" the Products contain almost no monk fruit.

3.    According to independent laboratory testing commissioned by Plaintiff's counsel, the Products contain 98.85% erythritol and only 1.15% monk fruit extract.

4.    As depicted and set forth in detail herein, on the labels of the Products, Defendant prominently and repeatedly represents the Products as a premium, monk fruit sweetener (the label statements are defined below as the "Representations").

5.    Defendant intentionally makes these Representations to capitalize on consumers' desire to purchase a premium sweetener that is derived from a natural source: monk fruit.

6.    Furthermore, Defendant intentionally omits the truth—that the Products are almost completely comprised of erythritol, a chemically processed sugar alcohol with known health risks, including heart attack, stroke and digestive issues.

7.    Reasonable consumers of Defendant's Products, like Plaintiff, are misled to believe that they are purchasing a premium sweetener that contains a substantial amount of monk fruit when in fact they are purchasing a Product that contains 98.85% erythritol.

8.    Plaintiff and reasonable consumers have suffered economic injury based on the purchase price of the Products, which they would not have purchased or would not have purchased on the same terms if they knew the truth.

9.    Defendant's conduct in making the false and misleading Representations violates Illinois law.

10.    Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent an Illinois Subclass and a Multi-State Consumer Protection Class. Plaintiff

2

asserts claims for violation of consumer protection laws, breach of express warranty, negligent misrepresentation and unjust enrichment.

## PARTIES

11.     Plaintiff Valerie Kinman resided in Illinois during the Class Period (defined below) and purchased the Products multiple times from stores located in this judicial district.

12.     Defendant Saraya USA, Inc. d/b/a Lakanto is a Utah corporation, with its principal place of business in Orem, Utah.

13.     Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

14.     At all times material hereto, Defendant was conducting business in the United States, including in Illinois, through its services as a manufacturer and supplier to various stores in Illinois and by, among other things, maintaining agents for the customary transaction of business in Illinois.

15.     Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district.

16.     The deceptive acts giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

17.     The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omission alleged herein.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District.

20.     Defendant has engaged in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including because Defendant placed the Products into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

21.     In accordance with 28 U.S.C. §§ 1391(a) and (b), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

### A.  Defendant's Representations are False and Misleading

22.     The following are label images of the Products at issue:









23.    The front and back labels of the Products contain the following images and statements (collectively, the "Representations"):

    i.    On the front label, in very large all-caps, bold lettering, the statement "MONKFRUIT SWEETENER"[2];

    ii.    On the front label, a large image of what appears to be a Buddhist monk. In accordance with the vignette on the back label, the monks discovered monk fruit and used it to "increase chi" or "life energy";

    iii.    On the back label, a vignette stating: "**OVER A THOUSAND YEARS AGO** In the remote mountain highlands of Asia, a group of Buddhist monks called the Luohan achieved enlightenment and ascension through meditation and pure living. The monks discovered a rare superfood prized for its sweetness and ability to raise chi, or life energy. This sacred fruit was named monk fruit and was used for centuries to increase chi and well-being, earning it the nickname 'The Immortals Fruit.'";

    iv.    Also on the back label, the statement: "We still harvest monk fruit for Lakanto in the same pristine area according to traditional and environmental methods."; and

    v.    "**DISCOVER YOUR CHI** Lakanto's mission is to bring chi to life by inspiring people to reach their highest potential in health and wellness and by creating

---

[2] Directly below this representation, in smaller, white lettering are the words "WITH ERYTHRITOL". In addition, erythritol is included in the ingredient list, which states: "INGREDIENTS: Erythritol, Monk Fruit Extract". The disclosure that the Products contain erythritol does not remedy or excuse Defendant's misleading Representations. Despite the disclosure, reasonable consumers of Defendant's Products do not expect that the Products contain 98.85% erythritol and only 1.15% monk fruit. Instead, as set forth herein, Defendant's Representations lead consumers to believe that the Products contain a substantial amount of monk fruit, when in fact they contain almost no monk fruit.

products that are innovative, delicious, natural, nutritious, sugar-free, and healthy."

24.    These Representations are voluntary advertising statements.

25.    The Representations are not governed or required by any government or FDA regulation or requirement.

26.    Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

27.    These Representations, individually and collectively, are likely to mislead and do mislead reasonable consumers to believe that the Products contain a substantial amount of monk fruit.

28.    The Products in fact contain almost no monk fruit.

29.    Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

30.    In January and February of 2025, the laboratory conducted testing for sugar alcohols by Liquid Chromatography Refractive Index Detector (LC-RID), which tests for compounds like sugars and polymers.

31.    The laboratory used the following testing methodologies, which test for sugars in food products:

  i.    AOAC official method 980.13;

  ii.    AOAC official method 982.14; and

  iii.    AACC Method 80-40.

32.    According to the results of the scientific testing, the Products contain 98.85% erythritol.

33. According to the results of the scientific testing, the Products contain only 1.15% monk fruit extract.

34. The Products contain the same ingredients and the same composition irrespective of size or "flavor" (e.g., "classic" or "golden" flavor).

35. Accordingly, the results of the testing commissioned by Plaintiff's counsel apply to all of the Products at issue.

**B. Consumers Believe Monk Fruit is a Superior Sweetener**

36. The amount of monk fruit contained in the Products is material to Plaintiff and reasonable consumers.

37. Monk fruit sweetener is a zero-calorie sweetener derived from a natural source— monk fruit.

38. Monk fruit is considered safe to consume and without adverse effects.

39. In contrast to monk fruit, there are known, documented health risks associated with consumption of substantial amounts of erythritol.

40. A specialist in preventative cardiovascular medicine led a study funded by the National Institute of Health (NIH), which found "that erythritol is closely associated with risk for 'major adverse cardiovascular events.' In other words, people who have high blood levels of erythritol are more prone to heart attacks, stroke and even death."[3]

41. In addition, the study found: "'A serving of erythritol in common 'keto-friendly' processed food products made blood levels of erythritol go up 1,000-fold, well above the levels linked to enhanced clotting risks,' Dr. Hazen states. 'We found that the risk for clotting can be increased for several days after consumption of just one serving of artificially sweetened food

---

[3] https://health.clevelandclinic.org/erythritol

containing erythritol.'"[4]

42.    Dr. Hazen also recognizes the difficulty of identifying foods that contain high levels of erythritol, even for consumers who read nutrition labels: "'We know that people buying these products are trying to do something good for their health by eating foods that are promoted as better for them. But in reality, they may be inadvertently increasing their risk for harm.'"[5]

43.    Erythritol is also known to cause stomach and digestive upset.

## C.  **Plaintiff Reasonably Relied on Defendant's Representations**

44.    During the last three years, Plaintiff purchased Defendant's Products on numerous occasions from stores located in Ottawa, Peru and Naperville, Illinois.

45.    Plaintiff purchased the 8.29 oz size of the Products from a Walmart store located in Ottawa, Illinois on approximately two occasions in 2024.

46.    To the best of her recollection, Plaintiff paid approximately $7.00 for the purchases made from Walmart.

47.    Plaintiff purchased the 16 oz size of the Products from a Big Lots store located in Peru, Illinois on approximately five occasions during 2023 and 2024.

48.    Plaintiff purchased the bulk size of the Products from a Costco store located in Naperville, Illinois on approximately two or three occasions during 2023 and 2024

49.    Plaintiff purchased the Products for personal and family use.

50.    The Products purchase by Plaintiff bear the Representations, set forth above.

51.    Plaintiff viewed the Representations on the Product label and, acting reasonably under the circumstances, relied on the Representations.

---

[4] *Id.*
[5] *Id.*

52.     Based on the Representations, Plaintiff reasonably believed that the Products contain a substantial amount of monk fruit.

53.     Based on the Representations, Plaintiff reasonably believed that the monk fruit in the Products constitutes more than 1.15% of the Product composition.

54.     The amount of monk fruit contained in the Products as compared to the amount of erythritol contained in the Product is material to Plaintiff.

55.     As described herein, the Representations are false and misleading.

56.     Defendant knew the Representations were misleading when it made them.

57.     Had Plaintiff known at the time of purchase that the Representations were false and misleading, Plaintiff would not have purchased the Products or would have paid less for them.

58.     Defendant continues to sell the Products bearing the Representations.

59.     Plaintiff would like to purchase the Products in the future if they contained a substantial amount of monk fruit.

60.     Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

61.     Unless Defendant is enjoined from failing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the mislabeling of the Product has been addressed and remedied.

62.     Accordingly, Plaintiff's legal remedies are inadequate to prevent future injury.

**D.  Defendant's Products are Misbranded under the Law**

*The Products Are Misbranded Because They Contain Almost No Monk Fruit*

63.     Identical Illinois and federal laws require that food products be accurately and truthfully labeled.

64.     The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).[6]

65.     The Federal Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder are expressly adopted in the Illinois Food, Drug and Cosmetic Act ("IFDCA"). *See* 410 ILCS 620/1, *et seq*.

66.     Illinois has also adopted labeling regulations, which impose requirements identical to federal regulations.

67.     Any labeling violation of the FDCA is also a violation of the IFDCA.

68.     A food is misbranded "(a) If (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." *See* 21 U.S.C. § 343(a); 410 ILCS 620/11, *et seq*.

69.     Pursuant to the IFDCA: "If an article is alleged to be misbranded because the labeling is misleading or if an advertisement is alleged to be false because it is misleading, then in determining whether the labeling or advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design,

---

[6] Plaintiff does not seek to enforce the FDCA. As set forth herein, the FDCA is identical to the IFDCA and Defendant's violation of the IFDCA constitutes a predicate violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*., ("ICFA").

device, sound or any combination thereof, but also the extent to which the labeling or advertisement fails to reveal material facts in the light of such representations or material facts . . . ." ILCS 620/2.11.

70.     Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any label representation is misleading, the entire product is misbranded, and no other label statement can cure a misleading statement.

### *The Products Cannot be Lawfully Manufactured or Sold*

71.     The ILCS prohibits the "manufacture, sale or delivery, holding or offering for sale of any food, drug, device or cosmetic that is adulterated or misbranded."  ILCS 620/3.1.

72.     The ILCS prohibits the "adulteration or misbranding of any food, drug, device or cosmetic."  ILCS 620/3.2.

73.     The ILCS prohibits the "receipt in commerce of any food, drug, device or cosmetic that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise."  ILCS 620/3.3.

74.     The ILCS prohibits the "dissemination of any false advertisement."  ILCS 620/3.5.

75.     The Products are misbranded under the FDCA and ILCS because the label Representations are false and misleading as described herein.

76.     The Products are falsely advertised under the FDCA and ILCS because the label Representations are false and misleading as described herein.

77.     Defendant knew or should have known and knowingly and/or intentionally violated the ILCS by manufacturing, labeling, placing and/or receiving the misbranded Products in commerce.

78.     Plaintiff and the Class have been unlawfully deprived of money in an illegal transaction that occurred because Defendant sold them a Product that could not be legally manufactured, sold or possessed.

79.     Consumers have been directly injured by Defendant's illegal acts and misconduct. This harm goes beyond mere economic injury.

80.     In addition, because misbranded food—including the Products—cannot be legally sold or possessed, Plaintiff and members of the Class are entitled to a refund of the price paid to purchase the Products.

81.     Plaintiff and members of the Class may be harmed again because they want to purchase the Products in the future; however, without injunctive relief, Plaintiff and members of the Class will not be able to ascertain whether Defendant has truthfully and legally labeled the Products.

82.     Accordingly, absent an injunction prohibiting the misbranding, consumers are likely to be confused and/or misled and deceived in the future.

**E.  Plaintiff and Class members Purchased the Products to Their Detriment**

83.     Plaintiff and consumers purchased the Products to their detriment.

84.     The Products bear Defendant's uniform, misleading Representations.

85.     Defendant intentionally advertised, labeled, and sold the Products with the Representations.

86.      Defendant knew that reasonable consumers would consider the Representations material in deciding to purchase the Products, including that a reasonable person would attach importance to the Representations in determining whether to purchase the Products.

87. In addition, Defendant knew or should have known that reasonable consumers would consider as material whether the Products were legally saleable in determining whether to purchase the Products.

88. Defendant's material misrepresentations include its label statements that the Products are a "MONKFRUIT SWEETENER" containing a "rare superfood prized for its sweetness and ability to raise chi, or life energy". Defendant made the label Representations with the intent to defraud consumers in that, among other things, consumers would be less likely to purchase the Products if they knew the truth.

89. Plaintiff and Class members suffered damage in purchasing the Products, including based on the purchase price paid for the Products and because the Products are not legally saleable.

90. It is possible, however, that Plaintiff would purchase the Products in the future if the Representations were truthful and/or the Products were accurately labeled.

## CLASS ACTION DEFINITION AND ALLEGATIONS

91. **Class Definition:** Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself, on behalf of all others similarly situated, and as a member of the Classes defined as follows (collectively, the "Class"):

> **Multi-State Consumer Protection Class**: All citizens who, within the applicable statute of limitations period, purchased Defendant's Products for personal use within the following states: Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 ICLS §§ 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); New Jersey (N.J. Stat. §§ 56:8- 1, *et seq*.); Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.)[7], and who do

---

[7] The consumer protection and consumer fraud laws of each of the states that comprise the Multi-State Consumer Protection Class are similar to the consumer fraud law of the State of Illinois, as set forth herein. *See e.g.* Fla. Stat. §§ 501.201, *et seq*.; 815 ICLS §§ 505/1, *et seq*.; Mass. Gen. Laws Ch. 93A, *et seq*.; Mich. Comp. Laws §§ 445.901, *et seq*.; Minn. Stat. §§ 325F.67, *et seq*.; N.J. Stat. §§ 56:8- 1, *et seq*.; Wash. Rev. Code §§ 19.86.010, *et seq*. *See also Mullins v. Direct*

not claim any personal injury from using the Products (the "Multi-State Consumer Protection Class"); and

**Illinois Subclass:** All citizens of Illinois who, within the three years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of Illinois for personal use and who do not claim any personal injury from using the Products (the "Illinois Subclass").

92.     Members of the Class described are referred to as "Class members".

93.     Excluded from the Class is: (1) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

94.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

95.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

96.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1):**  The exact size of the Class is unknown and not available to the Plaintiff at this time, but it is clear that individual joinder is impracticable.  On information and belief, Class members number in the tens of thousands, but

---

*Digital, LLC,* No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)*, aff'd,* 795 F.3d 654 (7th Cir. 2015).

may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice. The Products are marketed and sold throughout the United States and the State of Illinois.

97.     **Common Questions Predominate – Federal Rule of Civil Procedure 23(a)(2):** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, *inter alia*:

- Whether the Product Representations are false, misleading and/or deceptive;

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by manufacturing, labeling, advertising and/or selling the Products;

- Whether Defendant violated Illinois law;

- Whether Defendant committed a breach of express warranty;

- Whether Defendant's conduct was and is negligent;

- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched.

98.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.

Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

99. **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories.

100. **Adequacy – Federal Rule of Civil Procedure 23(a)(4):** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

101. **Superiority and Substantial Benefit – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.   Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

102.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

103.   The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive relief and equitable relief, as described below, with respect to the Class

as a whole.

104.    Furthermore, injunctive relief is appropriate because Plaintiff seeks relief on behalf of the members of the putative Class who are likely to be misled and deceived by Defendant's label Representations. Accordingly, Plaintiff's claims are capable to repetition.

105.    The prerequisites to maintaining a class action pursuant to Rule 23, *et seq.* are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

106.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***
**(for Plaintiff and the Illinois Subclass)**

107.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

108.    Plaintiff brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

109.    The purpose of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, ("ICFA") is to protect consumers against fraud and unfair and deceptive acts in the conduct of commerce.

110.    Defendant's Products constitute "merchandise" within the meaning of 815 ILCS 505/1(b).

111.    Defendant is a "person" within the meaning of 815 ILCS 505/1(c).

112.    Defendant's activities continue a "sale" within the meaning of 815 ILCS 505/1(d).

113. The ICFA prohibits, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

114. Defendant's conduct constitutes an unfair and/or deceptive act and practice pursuant to the ICFA.

115. The deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression and/or omission of material facts alleged herein occurred in connection with Defendant's conduct of trade or commerce in Illinois

116. Defendant engaged in deception, fraud, false pretense, false promise, and/or misrepresentation in its manufacture and sale of the Products, including by making the false and misleading Representations described herein.

117. Defendant intended that Plaintiff and Class members rely on the Representations and the concealment, suppression and/or omissions of the material facts concerning the actual amount of monk fruit contained in the Products.

118. Defendant intended that Plaintiff and Class members rely on the concealment, suppression and/or omissions of the material fact that the Products are not legally saleable.

119. Defendant's conduct, described above, was and is likely to mislead—and Defendant intended to mislead and deceive—reasonable consumers.

120. Plaintiff and the Class were misled and deceived.

121. Defendant is aware that the Representations it has made about the Products were and continue to be false and misleading.

122.    Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and Class members suffering actual damage.

123.    Plaintiff and Class members purchased the Products for their own use or for use by a member of their household and not for resale.

124.    Plaintiff and Class members were deceived as a result of Defendant's misrepresentations and omissions.

125.    Plaintiff and the Class suffered injury in fact and lost money as a result of purchasing the Products due to Defendant's unlawful, unfair, and deceptive conduct.

126.    In addition, Defendant's unfair and deceptive acts and practices caused Plaintiff and Class members to purchase Products that were and are not legally saleable.

127.    Defendant's violation of the IFDCA also constitutes an unfair or deceptive act or practice and a predicate violation of the ICFA.

128.    Plaintiff and the Class were injured through their purchase of the Products, including because they would not have purchased the Products on the same terms if they had known the truth; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

129.    Plaintiff seeks equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein, including based on a refund of the purchase price paid for the Products.

## COUNT II

### Violation of State Consumer Fraud/Consumer Protection Acts
### (for Plaintiff and the Multi-State Consumer Protection Class or, alternatively, the Illinois Subclass)

130.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

131.    Plaintiff brings this cause of action on her own behalf and on behalf of the Multi-State Consumer Protection Class and/or the Illinois Subclass.

132.    The Consumer Fraud Acts and Consumer Protection Statutes of the States comprising the Multi-State Consumer Protection Class (the "Statutes") are substantially similar and prohibit the use of unfair and/or deceptive business acts and practices in the conduct of commerce.

133.    Defendant's actions, as complained of herein, constitute unfair, unlawful, unconscionable, deceptive, or fraudulent acts or practices in violation of the Statutes of each of the States comprising the Multi-State Consumer Protection Class.

134.    Defendant's uniform, misleading and deceptive Representations and omissions to Plaintiff and proposed Class members were, and are, unfair and deceptive acts and practices under the Statutes.

135.    Defendant intended that consumer rely on the Representations and omissions, as set forth herein.

136.    Defendant made the Representations and omissions intentionally, and with reckless disregard for the truth.

137.    It was likely that consumers would rely on Defendant's express label Representations.

138.    Consumers reasonably relied on Defendant's Representations and were misled.

139.    Plaintiff and proposed Class members were proximately injured by Defendant's unlawful conduct, including because they would not have purchased the Products on the same terms if they knew the truth; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

140.    Plaintiff and the proposed Class members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair and deceptive acts and practices, and to the relief set forth below.

**COUNT III**

**Breach of Express Warranty**
**(for Plaintiff and the Multi-State Class Consumer Protection Class or, alternatively, the Illinois Subclass)**

141.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

142.    Plaintiff brings this cause of action on behalf of herself, the Multi-State Consumer Protection Class and/or the Illinois Subclass.

143.    Defendant is a merchant of the Products.

144.    By advertising and selling the Products at issue, Defendant makes and made promises and affirmations of fact on the Products' packaging and labeling, as described herein.

145.    This labeling and advertising constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

146.    Defendant, through its advertising and labeling, created an express warranty that the Products comport with the label Representations.  Specifically, Defendant created an express

warranty that the Products are a "MONKFRUIT SWEETENER".

147.    The express warranty appears on all Product labels and specifically relates to the goods being sold.

148.    Despite Defendant's express warranty about the nature of the Products, the Products do not comport with express warranty because they contain 98.85% erythritol.  Thus, the Products are not what Defendant represented them to be.

149.    Accordingly, Defendant breached the express warranty about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

150.    Plaintiff and Class members reasonably relied on Defendant's express warranty.

151.    Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty.

152.    Plaintiff and members of the Class purchased the Products.

153.    Defendant breached the warranty laws of the states of the Multi-State Consumer Protection Class, as follows: Fla. Stat. § 672.313; 810 I.L.C.S. 5/2-313; 106 Mass. Gen. Laws Ann. § 2-313; M.C.L.S. § 440.2313; Minn. Stat. § 336.2-313; N.J. Stat. Ann. § 12A:2-313; and Wash. Rev. Code Ann. § 6A.2-313.

154.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed, including because they would not have purchased the Products on the same terms; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

155.    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to

be proven at trial.

## COUNT IV

### Negligent Misrepresentation
### (for Plaintiff and the Multi-State Consumer Protection Class or, in the alternative, the Illinois Subclass)

156.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

157.    Plaintiff brings this cause of action on behalf of herself, the Multi-State Consumer Protection Class and/or the Illinois Subclass.

158.    As described herein, Defendant made material misrepresentations that the Products are a "MONKFRUIT SWEETENER".

159.    Defendant had a duty to accurately and truthfully disclose facts about the actual amount of monk fruit contained in the Products.

160.    In making the Representations, Defendant knew or should have known that the Representations were false, misleading, or made without knowledge of truth or veracity.

161.    At an absolute minimum, Defendant negligently misrepresented and/or omitted material facts about the Products.

162.    Defendant intended to induce and actually induced Plaintiff and Class members to purchase the Products.

163.    Plaintiff and Class members reasonably and justifiably relied on Defendant's negligent misrepresentations and omissions in purchasing the Products.

164.    Plaintiff and Class members would not have purchased the Products, or would have purchased them on different terms, had they known the truth about Defendant's misrepresentations and omissions.

165.    As a direct and proximate cause of Defendant's misrepresentations and omissions, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT V

**Unjust Enrichment**
**(for Plaintiff and the Multi-State Consumer Protection Class or, in the alternative, the Illinois Subclass)**

166.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

167.     Plaintiff brings this cause of action on behalf of herself, the Multi-State Consumer Protection Class and/or the Illinois Subclass.

168.    Defendant, through its misleading Representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

169.    Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products.

170.    By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

171.    Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

172.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

173.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order disgorging all profits, benefits and other compensation obtained by Defendant due to its

wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the Class, prays for an Order as follows:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as class counsel;

B.      Declaring that Defendant's conduct violates the statutes referenced herein;

C.      Awarding all actual, general, special, incidental, punitive, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.      Awarding pre-judgment and post-judgment interest on such monetary relief;

E.      Granting appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to accurately and truthfully advertise, label and sell the Products;

F.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

G.      Awarding such other and further relief as equity and justice may require.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**VALERIE KINMAN**, individually and on behalf of all others similarly situated,

Dated:  July 3, 2025

By: _/s/ Adam C. York_
      One of Plaintiff's Attorneys

Adam C. York (ayork@kamberlaw.com)
KamberLaw LLC

220 N. Green St.
Chicago, IL 60607
Tel: 212-920-3072
Fax: 212-202-6364
Firm no. 62824

Naomi B. Spector (nspector@kamberlaw.com)
KamberLaw LLP
3451 Via Montebello, Suite 192-212
Carlsbad, CA 92009
Tel: 310-400-1053
Fax: 212-202-6364